**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DANIEL PHILLIPS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| UNITED STATES NUCLEAR REGULATORY COMMISSION, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Daniel Phillips ("Plaintiff"), on behalf of himself and all others similarly situated (the "Class" or "Class Members"), files this Class Action Complaint ("Complaint") against Defendant United States Nuclear Regulatory Commission ("NRC" or "Defendant") and complains and alleges upon personal knowledge as to himself and information and belief as to all other matters.

**INTRODUCTION**

1.      Plaintiff brings this class action against Defendant for its failure to safeguard and secure the personally identifiable information ("PII") of data breach victims, including Plaintiff (the "Class" or "Class Members").

2.      The information affected was provided by NRC's job applicants, including Plaintiff and Class Members, through an unauthorized exposure on NRC's SharePoint site without proper access restrictions (the "Data Breach").

3.      Defendant NRC is an independent agency of the United States government, see 5 U.S.C. § 552(f)(1), that was created by Congress in 1974 to ensure the safe use of radioactive materials for beneficial civilian purposes while protecting people and the environment.   The NRC

1

has an annual budget of about $1 billion and employs about 3,000 people located in five primary locations in the United States.[1]

4.      NRC allows job applicants to create resume online, collects and maintains job applicants' sensitive PII in its possession for the purpose of human resources.

5.      The data exposed in the Data Breach includes some of the most sensitive types of data that unauthorized individuals or entities seek in order to commit fraud and identity theft.  As a result of Defendant's negligence, job applicants' sensitive and valuable PII had been exposed on NRC's SharePoint site without proper access restrictions, since in or before 2013, until approximately April 2024.  On information and belief, information disclosed in the Data Breach includes but is not limited to NRC's job applicants' resume, name, Social Security number, address, phone number, email address, and citizenship.

6.      According to the notice letter from NRC to its job applicants through email on June 13, 2024, "[t]he document was a resume you submitted to a 2013 job NRC job vacancy and included your name, the last four digits of your social security number, address, phone, email, and citizenship. The document, along with other resumes associated with the same job vacancy, was mistakenly placed on the internal NRC SharePoint site without proper access restrictions, most likely in 2013.  The document was generally accessible to personnel working at the NRC, instead of only accessible to NRC personnel with a need to know the information and remained on the SharePoint site longer than the NRC needed to retain it.  The document was removed from the site on April 8, 2024, after discovery of the mistake."

7.      Although NRC states that the SharePoint site "was not accessible to the general

---

[1] Organizations & Functions, NRC, https://www.nrc.gov/about-nrc/organization.html (last visited June 14, 2024).

public -- only to personnel at the NRC with access to the NRC's internal network[]", it failed to discover the unauthorized exposure until over ten years later, during which time thousands of personnel at NRC had access to Plaintiff's and Class Members' PII. Based on information and belief, unauthorized individuals or entities have obtained access to Plaintiff's and Class Members' sensitive PII and committed a variety of financial and identity crimes.

8.    Based on information and belief, the Data Breach affected thousands of job applicants who have submitted their resume and PII through job applications since in or before 2013.

9.    As a result of Defendant's failure to protect the PII they were entrusted to safeguard, Plaintiff and Class Members suffered a loss of the value of their Personal Information, and have been exposed to or are at imminent and significant risk of identity theft, financial fraud, and other identity-related fraud into the indefinite future.

10.    Armed with the PII accessed in the Data Breach, unauthorized individuals or entities can commit a variety of crimes, including opening new financial information in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, and using Class Members' PII to target other phishing and hacking intrusions.

11.    Defendant violated the Privacy Act by failing to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard Plaintiff's and Class Member's PII against unauthorized access and disclosure.

12.    As a result of Defendant's inadequate security measures, the Data Breach occurred, and Plaintiff's and Class Members' PII was accessed and disclosed. This action seeks to remedy these failings and the harm caused to Plaintiff and Class Members as a result. Plaintiff brings this

action on behalf of himself and all persons whose PII was exposed as a result of the Data Breach.

13.     As a result of the Data Breach, Plaintiff and Class Members have experienced extreme identity theft and financial fraud attempts, incurred time and expenses to mitigate the same, have been exposed to a heightened and imminent risk of financial fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

14.     Plaintiff seeks remedies including, but not limited to, compensatory damages, treble damages, punitive damages, reimbursement of out-of-pocket costs, and injunctive relief, including improvements to Defendant's data security system, future annual audits, and adequate credit monitoring services funded by Defendant.

15.     Plaintiff, on behalf of himself and all other Class Members, asserts claim for violation under the Privacy Act, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

16.     Plaintiff Daniel Phillips resides in Montgomery, Illinois.  Mr. Phillips received an email from NRC on June 13, 2024 informing him of the Data Breach.

17.     Plaintiff has been forced to spend time and money addressing and attempting to mitigate harm and injury resulting from the Data Breach, including but not limited to, credit accounts opened in his name and online password breaches.  After battling frequent fraudulent attempts for years, Plaintiff was forced to file for Identity Fraud Protection in 2018.  The Identity Fraud Protection service requires Plaintiff to obtain a yearly-renewed identity pin to file his taxes each year.  Plaintiff has been traveling overseas for work for extended durations since 2016 and has experienced extensive difficulties retrieving the identity pin because the Identity Fraud

Protection service would not send such info internationally.  Plaintiff has thus incurred tax penalties and late fees, totaling approximately ten thousand dollars ($10,000).  Plaintiff is still working on paying off such debt as of today.  Plaintiff has also suffered emotionally over the stress resulting from the Data Breach and the frequent fraudulent attempts.

18.     Plaintiff was required to provide his PII to Defendant as a condition of applying for a job position at NRC.  Plaintiff does not have any ability to protect his PII that was or remains in Defendant's possession.

19.     Defendant NRC is an independent agency of the United States government with its principal place of business and main address in Washington, District of Columbia, and headquarters in Rockville, Maryland.  In the regular course of its business, Defendant takes custody of and maintains control over PII from its job applicants.

<u>**JURISDICTION AND VENUE**</u>

20.     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2) because (a) there are 100 or more Class Members, (b) at least one Class Member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the aggregate matter in controversy exceeds $5,000,000, exclusive of interests and costs.  The Court also has subject matter jurisdiction over the Privacy Act claim pursuant to 5 U.S.C. § 552a(g)(1)(D).

21.     This Court has general personal jurisdiction over Defendant because Defendant NRC the District of Columbia and much of the relevant conduct occurred here.

22.     Venue is proper in this District pursuant to 5 U.S.C. §552a(g)(5) because Defendant NRC in the District of Columbia and a substantial part of the events and omissions giving rise to these claims occurred here.

## FACTUAL ALLEGATIONS

### *Overview of Defendant*

23.     Defendant NRC is an independent agency of the United States government, created by Congress in 1974 to ensure the safe use of radioactive materials for beneficial civilian purposes while protecting people and the environment.   The NRC has an annual budget of about $1 billion and employs about 3,000 people located in five primary locations in the United States.

24.     In its "Protection of Submitted Information from Public Disclosure" on its website, NRC states that "[i]f any personal information you provide will be maintained in an NRC Privacy Act system of records you will be notified at the point of collection, through a Privacy Act statement, of the following: which system of records the information will be maintained in; the authority for and purpose of the system; statutorily-mandated disclosures and authorized routine uses; and the safeguards of the information, subject to the Privacy Act (5 U.S.C. 552a)[]";[2] and that retention and disposal of such info "are handled according to the principles of the Federal Records Act and the regulations and records schedules approved by the National Archives and Records Administration (NARA)."[3]

25.     In the regular course of its human resourcing process, Defendant collects, stores, and maintains the PII they receive from its job applicants.

26.     By creating and maintaining massive repositories of PII, Defendant has provided a particularly lucrative target for data thieves looking to obtain, misuse, or sell such data.

---

[2]     Privacy    Policy    and    Security    Notice,    NRC,    https://www.nrc.gov/site-help/privacy.html#comments (last visited June 14, 2024).
[3] *See Id*.  Retention and Disposal of Information Submitted at this Site.

*The Data Breach and Notice Letter*

27.     In or around 2013, Plaintiff applied for a job position at NRC and was required to provide his PII along with his resume.  Thousands of job applicants are estimated to have been required to provide such info to NRC through similar job application process.

28.     On or around June 13, 2024, Defendant NRC notified Plaintiff and Class Members of the Data Breach.  In its email notification to Plaintiff, NRC states:

> The purpose of this message is to notify you that a document containing personally identifiable information (PII) about you was posted on an internal Nuclear Regulatory Commission (NRC) SharePoint site without proper access restrictions. We apologize for this error and want to assure you that we are diligently working to prevent future improper handling of PII information. The document was a resume you submitted to a 2013 job NRC job vacancy and included your name, the last four digits of your social security number, address, phone, email, and citizenship. The document, along with other resumes associated with the same job vacancy, was mistakenly placed on the internal NRC SharePoint site without proper access restrictions, most likely in 2013.  The document was generally accessible to personnel working at the NRC, instead of only accessible to NRC personnel with a need to know the information and remained on the SharePoint site longer than the NRC needed to retain it.  The document was removed from the site on April 8, 2024, after discovery of the mistake. Please note that this SharePoint site was not accessible to the general public—only to personnel at the NRC with access to the NRC's internal network (the "Notice Letter").

29.     Approximately one year after his job application, in 2014, Plaintiff received multiple notifications that his PII was exploited on the "dark web", and alerts from his credit monitoring services, confirming the exposure of his PII.

30.     Prior to being notified of his PII exposure in 2014, Plaintiff was never involved in any data breaches. Plaintiff was extremely protective of his personal data.  He rarely engaged in online activities and monitored his credit closely through credit bureaus' credit monitoring services.

31.     The number of data breaches in 2014 was significantly less than recent years.[4]  With Plaintiff's limited online activities other than the NRC job application, his overall protection of his personal data, and awareness of his data security, based on information and belief, the breach would not have happened but for NRC's exposure of Plaintiff's PII.

32.     Although Defendant claims that the SharePoint site was not accessible to the general public, it failed to discover the unauthorized exposure until over ten years later, during which time thousands of personnel at NRC had access to Plaintiff's and Class Members' PII. Based on information and belief, unauthorized individuals or entities have obtained access to Plaintiff's and Class Members' sensitive PII and committed a variety of financial and identity crimes.

33.     According to information and belief, the Data Breach affected thousands of NRC's job applicants.

34.     The information exposed or acquired as a result of the Data Breach is described by NRC as a resume which included job applicants' name, the last four digits of social security number, address, phone, email, and citizenship.  *See* the Notice Letter.  However, based on information and belief, Plaintiff has provided his full social security number and believes the same has also been exposed, and causes a series of frequent fraudulent attempts over the years.  The exposed data contained Plaintiff's and Class Members' PII that was accessible, unencrypted, unprotected, and vulnerable to acquisition and/or exfiltration by the unauthorized actor.

35.     To date, Defendant has not disclosed crucial information, including, but not limited to, the exact duration of the Data Breach; the methodologies and full results of Defendant's

---

[4] *See* Dan Lohrmann, *2020 Data Breaches Point to Cybersecurity Trends for 2021* (January 22, 2021) ("Security breaches . . . increased by 67 percent since 2014 [to 2020].")

investigation; any steps taken by Defendant to safeguard its systems other than simply removing the compromised files.

36.    Despite the ongoing and long-term risks for financial fraud and identity theft for victims of the Data Breach, Defendant does not offer sufficient identity protection services for the affected individuals.  While NRC suggested obtaining a free credit report from each of the three national credit bureaus, it is far from sufficient for the Data Breach victims to mitigate the ongoing harms and long-term risks, or to compensate their actual damages.

37.    Plaintiff's and Class Members' PII was directly provided to Defendant, with the reasonable expectation and mutual understanding that Defendant would comply with its obligation to keep such information confidential and secure from unauthorized access.  Plaintiff and Class Members are harmed by such failure.

38.    By failing to safeguard Plaintiff's and Class Members' PII, Defendant violated the Privacy Act.

### *Defendant Knew That Criminals Target PII.*

39.    At all relevant times, Defendant knew or should have known that Plaintiff's and all other Class Members' PII was a target for malicious actors.  Despite such knowledge, Defendant failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class Members' PII from unauthorized exposure.

40.    Prior to 2014, the Federal Information Security Management Act governed software system requirements for federal agencies and contractors.  44 U.S.C. § 3541, *et seq*. President Obama signed the Federal Information Security Modernization Act of 2014 into law on December 18, 2014 (the "FISMA").

41.    FISMA requires NRC to develop and implement policies, procedures, and

guidelines on information security, and to comply with federal information security standards that FISMA makes compulsory and binding.

42.     Millions of unauthorized attempts to access sensitive United States government data systems take place each month.  NRC's prioritization of accessibility and convenience over security foreseeably heightened the risk of a successful intrusion into NRC's systems.  NRC's decisions not to comply with the Privacy Act and FISMA requirements for critical security safeguards enabled unauthorized access to Plaintiff's and Class Members' sensitive PII for over ten years without being detected.

43.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches, which has been widely reported in the last few years.

44.     In the wake of the significant rise in data breaches, the Federal Trade Commission has also issued an abundance of guidance for companies and institutions that maintain individuals' PII.[5]

45.     As a result of the notoriety of cyberattacks on systems like Defendant's, several other government entities have also issued warnings to potential targets so that they may be alerted and prepared for a potential data exposure like the Data Breach.

46.     The significant rise in data breaches have been a consistent problem for the past several years, providing Defendant sufficient time and notice to improve the security of its systems and engage in stronger, more comprehensive cybersecurity practices.

---

[5]  *See, e.g., Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N., https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last visited May 23, 2024).

47.     PII is a valuable property right.[6]  The value of PII as a commodity is measurable.[7] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[8]  American companies are estimated to have spent over $19 billion acquiring consumers' personal data in 2018.[9]  In fact, it is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

48.     As a result of its real value and the recent large-scale data breaches, identity thieves and cybercriminals have openly posted credit card numbers, Social Security numbers, and other PII directly on various Internet websites, making the information publicly available.  This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

49.     Therefore, Defendant clearly knew or should have known of the risks of data breaches and thus should have ensured that adequate protections were in place, particularly given the nature of the PII stored in its unprotected files and the massive amount of PII it maintains.

---

[6] *See* Marc van Lieshout, *The Value of Personal Data*, 457 IFIP ADVANCES IN INFO. AND COMMC'N. TECH. 26 (May 2015), https://www.researchgate.net/publication/283668023_The_ Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . . .").

[7] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

[8] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[9] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERT. BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

### *Theft of PII has Grave and Lasting Consequences for Victims.*

50.     Data breaches are more than just technical violations of their victims' rights.  By accessing a victim's personal information, the cybercriminal can ransack the victim's life: withdraw funds from bank accounts, get new credit cards or loans in the victim's name, lock the victim out of their financial or social media accounts, send out fraudulent communications masquerading as the victim, file false tax returns, destroy their credit rating, and more.[10]

51.     Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[11]  In addition, identity thieves may obtain a job using the victim's Social Security Number, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[12]

52.     Identity theft victims are frequently required to spend many hours and large sums of money repairing the adverse impact on their credit.

53.     As the United States Government Accountability Office noted in a June 2007 report on data breaches ("GAO Report"), identity thieves use identifying data such as Social Security Numbers to open financial accounts, receive government benefits, and incur charges and credit in

---

[10] *See* Laura Pennington, *Recent Data Breach Trends Mean Your Info Was Likely Stolen Last Year*, TOP CLASS ACTIONS (Jan. 28, 2019), https://topclassactions.com/lawsuit-settlements/privacy/data-breach/875438-recent-data-breach/.

[11] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h).  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official state or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

[12] *See Warning Signs of Identity Theft*, FED. TRADE COMM'N, https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft (last visited May 16, 2024).

a person's name.[13]  As the GAO Report states, this type of identity theft is more harmful than any other because it often takes time for the victim to become aware of the theft, and the theft can adversely impact the victim's credit rating.

54.    In addition, the GAO Report states that victims of this type of identity theft will face "substantial costs and inconveniences repairing damage to their credit records" and their "good name."[14]

55.    There may be a time lag between when PII is stolen and when it is used.[15]  According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

56.    Such personal information is such a crucial commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.  As a result of recent large-scale data breaches, identity thieves and cybercriminals have openly posted stolen credit card numbers, Social Security Numbers, and other PII directly on various Internet websites, making the information publicly available.

---

[13] *See Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOV'T ACCOUNTABILITY OFF. (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[14] *Id.* at 2, 9.

[15] For example, on average, it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information.   John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9, 12 (2019), https://www.iiisci.org/Journal/PDV/sci/pdfs/IP069LL19.pdf.

[16] U.S. GOV'T ACCOUNTABILITY OFF., *supra* n.22 at 29 (emphasis added).

57.     Due to the highly sensitive nature of Social Security numbers, theft of Social Security numbers in combination with other PII (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity.  TIME quotes data security researcher Tom Stickley, who companies employ to find flaws in their computer systems, stating, "If I have your name and your Social Security number and you haven't gotten a credit freeze yet, you're easy pickings."[17]

58.     Identity theft is not an easy problem to solve.  In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft, and some need over a year.[18]

59.     Plaintiff and Class Members must vigilantly monitor their financial accounts and their family members' accounts for many years to come.

60.     It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their PII has been exposed and made available to people willing to use that information for any number of improper purposes and scams, including making the information available for sale on the black-market.

### *Damages Sustained by Plaintiff and the Other Class Members*

61.     Plaintiff has been forced to spend time and money addressing and attempting to mitigate harm and injury resulting from the Data Breach, including but not limited to, the unauthorized opening of credit accounts in his name and online password breaches.

62.     As a result of his PII exposure, and after battling frequent fraudulent attempts for

---

[17] Patrick Lucas Austin, *'It is Absurd.' Data Breaches Show It's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019, 3:39 P.M.), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

[18] *2021 Consumer Aftermath Report: How Identity Crimes Impact Victims, Their Families, Friends and Workplaces*, IDENTITY THEFT RES. CTR., https://www.idthecenter.org/identity-theft-aftermath-study/ (last visited May 16, 2024).

years, Plaintiff was forced to file for Identity Fraud Protection in 2018. The Identity Fraud Protection service requires Plaintiff to obtain a yearly-renewed identity pin to file his taxes each year. Plaintiff has been traveling overseas for work for extended durations since 2016 and has experienced extensive difficulties retrieving the identity pin because the Identity Fraud Protection service would not send such info internationally. Plaintiff has thus incurred tax penalties and late fees, totaling approximately ten thousand dollars ($10,000). Plaintiff is still working on paying off such debt as of today.

63. After experiencing frequent fraudulent attempts, Plaintiff enrolled in multiple credit monitoring services, such as Credit Karma, and has been forced to monitor his credit frequently. Plaintiff has been forced to change his password at least quarterly, or monthly as needed. Plaintiff has also suffered emotionally over the stress resulting from the Data Breach and the frequent fraudulent attempts.

64. Plaintiff and all other Class Members have suffered injury and damages, including, but not limited to (i) a substantially increased risk of identity theft and medical identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

## CLASS ALLEGATIONS

65. This action is brought and may be properly maintained as a class action pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

66.     Plaintiff brings this action on behalf of himself and all members of the following Class of similarly situated persons:

> All persons whose PII was accessed in the Data Breach by unauthorized persons.

67.     Plaintiff reserves the right to amend the above definition or to propose other or additional classes in subsequent pleadings and/or motions for class certification.

68.     Plaintiff is a member of the Class.

69.     Excluded from the Class are Defendant, it affiliates, parents, subsidiaries, officers, agents, directors, the judge(s) presiding over this matter, and the clerks of said judge(s).

70.     This action seeks both injunctive relief and damages.

71.     Plaintiff and the Class satisfy the requirements for class certification for the following reasons:

72.     **Numerosity of the Class.**  The members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable.  Upon information and belief, there are thousands Class Members in the Class.  The exact number and identity of Class Members is readily identifiable in Defendant's records, which will be a subject of discovery.

73.     **Common Questions of Law and Fact.**  There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

a.      Whether Defendant, in violation of the Privacy Act, failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records and to protect against anticipated threats to its security and integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to Plaintiff and Class Members;

b.      Whether Defendant, in violation of the Privacy Act, disclosed Plaintiff's and Class

Members' PII without their prior written consent for no statutorily permitted purpose;

c.        Whether Plaintiff's and Class Members' PII was compromised in the Data Breach;

d.        Whether Plaintiff and Class Members are entitled to injunctive relief; and

e.        Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's conduct.

74.        **Typicality.**  The claims or defenses of Plaintiff are typical of the claims or defenses of the proposed Class because Plaintiff's claims are based upon the same legal theories and violations of law.  Plaintiff and Class Members all had their PII exposed in the Data Breach. Plaintiff's grievances, like the proposed Class Members' grievances, all arise out of the same business practices and course of conduct by Defendant.

75.        **Adequacy of Representation.**  Plaintiff will fairly and adequately represent the Class on whose behalf this action is prosecuted.  His interests do not conflict with the interests of the Class.

76.        Plaintiff and his chosen attorneys -- Tycko & Zavareei LLP and Finkelstein, Blankinship, Frei-Pearson & Garber, LLP (collectively, "Plaintiff's Counsel") -- are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this Complaint.  In particular, Plaintiff's Counsel have respectively been appointed as lead counsel in several complex class actions across the country and has secured numerous favorable judgments in favor of its clients, including in cases involving data breaches.  Plaintiff's Counsel are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class Members.  Finally, Plaintiff's Counsel possess the financial resources necessary to ensure that a lack of financial capacity will not hamper the litigation and is willing to absorb the costs of the litigation.

77.   **Predominance.**  The common issues identified above arising from Defendant's conduct predominate over any issues affecting only individual Class Members.  The common issues hinge on Defendant's common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of himself and all other Class Members.  Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

78.   **Superiority.**  A class action is superior to any other available method for adjudicating this controversy.  The proposed class action is the surest way to fairly and expeditiously compensate such a large number of injured persons, to keep the courts from becoming paralyzed by a multitude of repetitive cases, and to reduce transaction costs so that the injured Class Members can obtain the most compensation possible.

79.   Class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious and wasteful litigation for many reasons, including the following:

a.   It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions.  Many members of the Class are not in the position to incur the expense and hardship of retaining their own counsel to prosecute individual actions, which, in any event, might cause inconsistent results.

b.   When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class.  This will promote global relief and judicial efficiency in that the liability of Defendant to all Class Members, in terms of monetary damages due and terms of equitable relief, can be determined in this single proceeding rather than in multiple individual proceedings where there will be a risk of inconsistent and varying results.

c.   A class action will permit an orderly and expeditious administration of the Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions.  If Class Members are forced to bring individual suits, the transactional costs, including those incurred by Defendant, will increase dramatically, and the courts will be clogged with a multiplicity of lawsuits concerning the very same subject matter, with the identical fact patterns and the same legal issues.  A class action will promote a global resolution and will promote uniformity of relief as to the Class Members and as to Defendant.

d.  This lawsuit presents no difficulties that would impede its management by the Court as a class action. The class certification issues can be easily determined because the Class includes only job applicants of Defendant, the legal and factual issues are narrow and easily defined, and the Class Membership is limited. The Class does not contain so many persons that would make the Class notice procedures unworkable or overly expensive. The identity of the Class Members can be identified from Defendant's records, such that direct notice to the Class Members would be appropriate.

80.     **Injunctive relief.** Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive or equitable relief on a class-wide basis.

## CAUSES OF ACTION

### Violations of the Privacy Act of 1974, 5 U.S.C. § 552a

81.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint .

82.     NRC is an agency within the meaning of the Privacy Act.

83.     NRC obtained and stored Plaintiff's and Class Members' PII, including NRC's job applicants' resume, name, Social Security number, address, phone number, email address, and citizenship.

84.     In violation of the Privacy Act, NRC willfully and intentionally failed to comply with FISMA. NRC's decisions not to comply with the Privacy Act and FISMA requirements for critical security safeguards enabled unauthorized access to Plaintiff's and Class Members' sensitive PII for over ten years without being detected. As a result, Plaintiff's and Class Members' PII under NRC's control was exposed and misused.

85.     Defendant knew the risks of collecting and storing Plaintiff's and all other Class Members' PII and the importance of maintaining secure systems. Defendant knew of the many

data breaches that targeted companies and government agencies that store PII in recent years.

86.     Given the nature of being a government agency, the sensitivity and value of the PII it maintains, and the resources at its disposal, Defendant should have identified the vulnerabilities in their systems and prevented the Data Breach from occurring.

87.     In a continuous course of wrongful conduct for more than ten years, Defendant willfully refused to implement electronic security safeguards required by law.  Defendant willfully failed to follow appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could cause substantial harm, embarrassment, inconvenience, or unfairness to Plaintiff and Class Members, in violation of 5 U.S.C. § 552a(e)(10).

88.     Plaintiff and Class Members are a well-defined, foreseeable, and probable group of job applicants that Defendant was aware, or should have been aware, could be injured by inadequate data security measures.

89.     Plaintiff and Class Members have no ability to protect their PII that was or remains in Defendant's possession.

90.     As a direct and proximate result of its non-compliance with federal requirements, NRC willfully disclosed Plaintiff's and Class Members' records without their prior written consent for no statutorily permitted purpose, in violation of 5 U.S.C. § 552a(b).

91.     By failing to provide timely and complete notification of the Data Breach to Plaintiff and Class Members, Defendant prevented them from proactively taking steps to secure their PII and mitigate the associated threats.

92.     As a result of Defendant's above-described wrongful actions, inaction, and lack of ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other Class

Members have suffered and will continue to suffer economic damages and other injury and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft and medical identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

### **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A.     Certifying that Class as requested herein, appointing the named Plaintiff as Class representative and the undersigned counsel as Class Counsel;

B.     Finding Defendant liable for its failure to establish adequate and legally required safeguards to ensure the security of Plaintiff's and Class Members' PII compromised in the Data Breach;

C.     Requiring that Defendant pay for notifying the members of the Class of the pendency of this suit;

D.     Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

E.     Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate.  Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting,

implementing, and training personnel on best data security practices to safeguard PII and to provide or extend additional credit monitoring services and similar services to protect against all types of identity theft and medical identity theft.

F.      Awarding Plaintiff and the Class prejudgment and post-judgment interest to the maximum extent allowable;

G.      Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable, together with their costs and disbursements of this action; and

H.      Awarding Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: July 10, 2024                    Respectfully submitted,


*/s/ Anna Haac*
Anna Haac
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave., NW, Suite 1010
Washington, DC 20006
Tel.: (202) 973-0900
ahaac@tzlegal.com

Todd S. Garber (*Pro Hac Vice application forthcoming*)
**FINKELSTEIN, BLANKINSHIP FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
tgarber@fbfglaw.com

*Attorneys for Plaintiff and the Proposed Class*